WORSLEY *v.* BURKS.

4-8805                                        218 S. W. 2d 717

Opinion delivered March 28, 1949.

*Marcus Evrard* and *D. Fred Taylor, Jr.,* for appellant.

*H. G. Partlow* and *Myron T. Nailling,* for appellee.

GRIFFIN SMITH, Chief Justice. Albert P. Burks brought suit in ejectment against Harry P. Worsley and William C. Howard,[1] alleging their encroachment upon a north-south strip of land approximately 200 feet wide, forming part of the West Half of Section Twenty-One, Township Fourteen North, Range Twelve East, Mis-

[1] The wife of the plaintiff and the wife of each defendant were made parties to the suit.

sissippi County.[2] The jury found that the eastern boundary of the Burks land was a line established by Cobb and Davidson, surveyors who testified. The appeal by Worsley and Howard raises three questions—(a) sufficiency of plaintiffs' title, (b) want of substantial evidence in contradiction of defense claims of adverse possession or an agreed line; and (c) prejudicial error in excluding testimony.

*First—Muniments of Title.*—The contention that title in plaintiffs was not sufficiently deraigned must fail in the face of a stipulation that Burks and his wife had a record title to the principal acreage of which the strip was claimed to be a part. Purpose of the stipulation was to withdraw from the controversy all matters of incidental disagreement other than the right of either side to prove the correct boundary.

*Second — Adverse Possession.* — Appellants' most effective witness was O. W. Gauss, an engineer, who had owned the South East Quarter and the South Half of the North East Quarter of Section 21, having purchased in 1910. He sold to W. D. Moore in 1917 after making a survey. The West Half of 21 was then owned by H. E. Fisher.

Gauss testified that he told Fisher of his plan to sell to Moore and of his desire to establish property lines, explaining where he would begin. Fisher told him to "go ahead." The base area was one of the wildest parts of Mississippi County, known as Phillips Cane Brake. In projecting the line Gauss marked a tree at the north terminus; and, he declared, "That is the true line from field notes of the section." The witness filed as an exhibit to his testimony a plat he had recently drawn, made after he had reëxamined the area for the purpose of familiarizing himself with markers, distances, directions, and known boundaries.

Appellants say the record sustains their contention that the original Government surveyors in 1845 worked

---

[2] Burks and his wife claimed ownership of the North Half of the North East Quarter, and the West Half of Sec. 21, while Worsley and his wife and Howard and his wife claimed the South Half of the North East Quarter and the west 143 acres of the South East Quarter of Section 21.

from the south northward, but that because of lake barriers "the regular order of survey" was disregarded and the east line of 21 was brought in from the north. As a result, when the north-south lines are extended to a common east-west terminus, the true line between Sections 17 and 18 does not join with the line between Sections 19 and 20; nor does the line between Sections 21 and 22 join with the line between Sections 15 and 16. Instead, an offset, or "jog," is said to be shown. This would vary according to accuracy of surveyors and the quality of their work.

Copies of Government field notes presumptively on file with the Mississippi Circuit Clerk were available to Gauss when he testified that in connection with surveys he had made (some for the Interior Department) it had been determined that the southeast corner of Section 21 was not shown on the survey of 1845.[3] In making a survey for Harry P. Worsley in 1940, Gauss started at the northeast corner of Section 19 and went to the northeast corner of Section 21. There, according to this witness, a discrepancy of 150 feet was to be found—an offset or variance from the Government field notes. Therefore, concluded Mr. Gauss, "These corners do not represent the true northeast and northwest corners of that Section."

This testimony is disputed by H. E. Davidson and W. D. Cobb, each of whom had made surveys. Davidson, in 1940 (at the request of Mrs. Cowan who then owned the land (began at what he said was the northeast corner of Section 21. He found an iron post or pipe and went west 2678 feet from it (22 feet more than the Government plat showed) and found an iron pipe in the quarter corner.[4] From this point Davidson surveyed south "through the center of the section."

[3] The reference to a *survey* of 1845 was probably an error. Records in the State Land Office disclose an original survey in 1837 by Ferguson and Greer, and a re-survey in 1943 by Wm. D. Ferguson. A *plat* dated October 27, 1845, is on file, a copy of which was used in the trial of this cause.

[4] One surveying with a compass follows the earth's curvature, while a surveyor using a transit does not, hence variations occur. [Davidson used a transit.]

Cobb, engineer for Drainage District No. 17 of Mississippi County (a position he had held for five years) had recently surveyed Section 21. Like Davidson, he located what was thought to be the northeast corner of Section 21, and found the iron pipe ''where the northeast corner should be.'' A mile north he found ''three iron corners not over six inches apart.'' These were thought to be markers set by other surveyors whose work appeared to be in harmony. Cobb determined this to be the northeast corner of Section 16. This belief was reinforced when it was observed that a line of trees ran north and south, and there was an east-west road.[5]

In running a line south from the three pipes to the northeast corner of Section 21, Cobb found an iron pipe 21½ feet farther west than the Government notes called for. From the northeast corner of Section 21, the survey was 2678 feet west where an iron corner was found, ''. . . with a tree line going north which, in my opinion, was the dividing line between the owners on the north.'' Other testimony by this witness is copied in the margin.[6]

It is quite clear from the Government plat that the offset mentioned by Gauss was the result of his own surveying and the conclusions he drew from facts thought to have been established. It is conceded that the official surveys do not show the ·discrepancies; hence it cannot be said that testimony given by Davidson and

---

[5] Appellants have abstracted Cobb's references to the three iron pipes as having been found "at what seemed to be the north*west* corner of Section 16." The witness did make this statement, but it was immediately corrected with the explanation that he intended to say the north*east* corner.

[6] Continuing as a witness, Mr. Cobb said: "I was satisfied that the corner was correct and had·been established. The iron·post was rusty—it had apparently ·been there for years and years. I went back to the northeast corner of Sec. 21; the iron that I found there established what appeared to be the corner. My survey ran due south and continued down the east line of Sec. 21, 1320 feet, or a quarter of a mile. There I established an iron. corner and went west 2670 feet—the same distance I had gone on the north line—and established a corner there, or, rather, a point. Then I went to the north 'quarter corner' where I had made the check of the same distance, . . . and ran a line 1320 feet along this line, with 'these two points.' We established 'this' point on the transit line, 1320 feet south of the northeast corner of Sec. 21. . . . This embraced a regular tract of approximately 80 acres. . . . Then I continued the same line south until I came to the woods on the edge of the old lake."

Cobb did not substantially dispute what Gauss thought to be true. The Government map does not present a picture requiring us to say, as a matter of law, that original surveyors who started from the south side of Township Fourteen and worked northward were in disagreement with others who started from the north and went southward, with resulting irregularities accounting for the land appellants contend for. Other witnesses testified to facts supporting the contentions of each group of litigants, presenting an issue for the jury. Among these was Mrs. Pearl D. Cowan, appellants' predecessor in title, who bought the West Half of Section 21 in 1926 from Hattie Fisher Riales, administratrix of the estate of H. E. Fisher. Mrs. Cowan sold the South West Quarter of Section Twenty-One to appellees December 30, 1946. Worsley and Howard (November 26, 1934) purchased from Penn Mutual Life Insurance Company the South Half of the North East Quarter and the West 143 acres of the South East Quarter of Section 21. Mrs. Cowan testified that when she bought the property in 1926, only 67 acres had been cleared in the entire section. A north-south strip of land was intentionally left uncleared as a barrier to catch driftwood during overflows. It represents what is now the subject of controversy. Appellants, working from their lands on the east, went west and began cutting the timber. [The Burks suit was filed January 13, 1947].

Although admitting that some fencing had been done at an early date, Mrs. Cowan said that much of it was destroyed by high water. It had been indifferently constructed for convenience of a temporary nature, with wire strung from tree to tree, with no intention of marking boundaries.

The conversation Gauss had with Fisher occurred in front of the garage. The parties were not on the property; and the jury, in construing this testimony, would have been warranted in finding that the conversation did not definitely fix place or distance. On the whole there was competent testimony to support the finding against adverse possession, and in favor of the Cobb-Davidson survey.

*Third—Excluded Evidence.*—Appellants proffered a decree of foreclosure wherein Penn Mutual Life Insurance Company was plainitff and J. T. Fargarson & Company the principal defendant. The mortgage pertained to the South Half of the North East Quarter and the West 143 acres of the South East Quarter of Section 21—the property purchased by Worsley and Howard, but once owned by John and Pearl D. Cowan, who were made defendants in the foreclosure action. Appellants insist that the plaintiff in that cause was decreed to be the owner of all property described in the complaint, hence ownership of the strip now contended for was *res judicata*. The decree did not have that effect. The true eastern boundary of the West Half of Section 21 was not an issue.

Affirmed.